| | | |
|---|---|---|
| NORTH CAROLINA | FILED | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
| ROWAN COUNTY | 2022 AUG -2 P 1:46 | 22 CvS 1335 |

MARSHA FRYE,
    Plaintiff, ROWAN CO., C.S.C.

v.     BY\_\_\_\_\_     COMPLAINT

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,
    Defendant.

NOW COMES the Plaintiff, by and through her counsel, who, for her cause of action, alleges and says as follows:

1. That the Plaintiff is a citizen and resident of Rowan County, North Carolina.

2. That the Defendant is, upon information and belief, a foreign corporation authorized to transact insurance business in the State of North Carolina with its principal office and place of business located in Hartford, Connecticut.

3. That this action arises out of a group life insurance policy issued by the Defendant (policy number GL 804746) in the State of North Carolina insuring the life of Plaintiff's husband, Eric S. Frye, who died on November 16, 2020.

4. That the life insurance coverage was purchased by the decedent from Defendant as part of an employer benefits plan where he was employed by CSP Acquisition Group, d/b/a Continental Structural Plastics, Inc. Under the terms of the policy and the certificate of insurance issued to decedent, Plaintiff was the sole beneficiary under the policy of life insurance insuring the life of Eric S. Frye.

5. That Plaintiff is entitled to recover the policy benefits as a result of the death of her husband, Eric S. Frye, per the terms of the insuring agreement and certificate of insurance.

6. That the Plaintiff timely submitted proof of loss and applied for payment of the death benefits due, but Defendant only made partial payment by paying the $50,000 due under the non-contributory Basic Life Insurance and $10,000 of the $70,000 due under the contributory Supplemental Life Insurance.

7. That, Defendant tendered partial payment under the contributory Supplemental Life Insurance coverage in the amount of $10,000 on January 22, 2021 and, shortly thereafter, Defendant acknowledged that Plaintiff could accept the partial payment without prejudice to her claim that the additional $60,000 in coverage was properly due and payable.

8. That, upon information and belief, in or around the Fall of 2019, the employer

sponsored insurance benefits that had been provided to its employees through Aetna was changing because of Defendant's merger with Aetna.

9. That, in connection with the changeover of insurance coverage from Aetna to Defendant, the employer offered its employees, including Eric S. Frye, new and additional coverage through Defendant, which included the option for employees to purchase contributory Voluntary Supplemental Life Insurance coverage up to the guaranteed issue amount of $200,000 without the need to provide evidence of insurability.

10. That, based upon the employer's solicitation of additional contributory voluntary coverage for its employees through Defendant, Eric S. Frye purchased $70,000 of contributory Supplemental Life Insurance Coverage effective January 1, 2020, without being asked to submit evidence of insurability. Upon purchasing the coverage, Plaintiff was charged and paid monthly premiums to Defendant for the Supplemental Coverage from January 2020 up until his death in November 2020.

11. That the records maintained by decedent's employer, from and after January 1, 2020, through and including the date of decedent's death, reflected that decedent's employment benefits included Voluntary Life Insurance in the amount of $70,000 at a monthly premium cost of $30.80 with Marsha Frye, decedent's wife, listed as the "Primary 100%" beneficiary of said coverage.

12. Following Eric S. Frye's death, and when tendering the $10,000 in life insurance benefits under the Voluntary/Supplemental Life Insurance coverage to Plaintiff, Defendant contended that decedent was not eligible to purchase the coverage that he purchased.

13. That, at the time Plaintiff accepted the partial payment of $10,000 made by Defendant, Plaintiff notified Defendant that she disagreed with Defendant's decision to pay only $10,000 of the $70,000 in coverage and she requested that Defendant provide documentation to support its contention that Eric S. Frye was notified that he was not eligible to purchase the contributory Supplemental Life Insurance on or before January 1, 2020.

14. That, after Defendant provided Plaintiff with partial claim documentation, Plaintiff, through counsel, wrote to Defendant on March 20, 2021, requesting that missing documentation be provided so that Plaintiff could move forward with an appeal of the adverse claim determination. A copy of said correspondence is attached hereto as Exhibit A.

15. That the Defendant has failed, refused, and neglected to provide the documentation requested in Exhibit A despite numerous subsequent requests that the documents be provided.

16. That, instead of responding to Plaintiff's requests for claim documentation, Defendant reissued an adverse claim determination on May 25, 2021, and then issued letters dated May 28 and June 21, 2021, wherein Defendant took the position that it paid Plaintiff $10,000 in error and demanded that the Plaintiff repay the $10,000.

17. That the Defendant unjustifiably and arbitrarily denied Plaintiff's claim for the remaining $60,000 of life insurance benefits under the contributory Voluntary Supplemental Life

Insurance Eric S. Frye purchased effective January 1, 2020.

18. That, in January 2022, Defendant filed a false information return with the Internal Revenue Service (IRS) reporting the $10,000 life insurance benefit payment made to Plaintiff in 2021 as Miscellaneous Taxable Income paid to Plaintiff.

19. That on February 22, 2022, Plaintiff, through counsel, sent a demand to Defendant requesting that it file a corrected return with the IRS withdrawing the 1099-Misc for $10,000 as erroneous. A copy of the February 22, 2022, correspondence is attached hereto as Exhibit B.

20. That on March 9, 2022, Plaintiff, through counsel, sent a demand to Defendant renewing her request that she be provided with claim information and documentation and setting forth her appeal of the adverse benefits determination regarding the contributory Voluntary Supplemental Life Insurance benefits in the amount of $70,000. A copy of the March 9, 2022, correspondence is attached hereto as Exhibit C.

21. That, although Defendant has acknowledged Plaintiff's Appeal and her request for information and records relating to the adverse benefits determination, Defendant has failed to provide the information and documents requested and Defendant has failed to act on Plaintiff's appeal in a timely manner.

## COUNT I (ERISA Claim, 29 U.S.C. §1132(a)(1)(B))

22. That the allegations of Paragraph 1 through 21 above are re-alleged as if fully set out herein.

23. That, Plaintiff's claim for group life insurance benefits in this matter is subject to the provisions of 29 U.S.C. §1001, *et seq.*, and at all times material to this action, Defendant administered Plaintiff's claim for group life insurance benefits while acting under or with a conflict of interest in that Defendant determined compensability of Plaintiff's claim and would be required to pay the benefits itself, without reimbursement, under a policy of insurance issued in the State of North Carolina and subject to the insurance laws of the State of North Carolina. As a result, Defendant's decision regarding payment of Plaintiff's life insurance claim is subject to a conflict of interest, its adverse benefits determination should be accorded no deference, and the claim should be reviewed *de novo* by this Court.

24. That, to the extent Defendant would now contend there were other administrative remedies available to Plaintiff under the Plan, pursuing such remedies would be futile given Defendant's initial determination and its subsequent failure to respond to Plaintiff's Appeal.

25. That Defendant had no factual basis to determine that Eric S. Frye was not eligible to purchase $70,000 of Voluntary Supplemental Life Insurance coverage because of not providing evidence of insurability in that Eric S. Frye was not notified of a requirement that he submit evidence of insurability before being allowed to purchase the coverage.

26. That the materials provided by Defendant relating to the eligibility of the employees

to purchase such additional contributory coverage created the impression that such additional voluntary coverage could be purchased without evidence of insurability up to the guaranteed issue amount of $200,000 and the employer made such representations to its employees, including Eric S. Frye, when soliciting the employees' purchase of such additional coverage.

27. That Eric S. Frye's employer solicited Eric S. Frye's purchase of the Voluntary Supplemental Life Insurance at a time when the employer was acting as Defendant's agent, pursuant to GS 58-58-30, and said soliciting agent did not notify Eric S. Frye that Mr. Frye needed to submit evidence of insurability in order to be eligible for the $70,000 of coverage purchased.

28. That Eric S. Frye's employer, acting as Defendant's agent in accordance with GS 58-58-30, charged and accepted monthly payments from Eric S. Frye for premiums in the amount of $30.80 for the Voluntary Supplemental Life Insurance coverage in the amount of $70,000 knowing that Eric S. Frye had not submitted proof of insurability.

29. That, to the extent that submitting evidence of insurability could have been a prerequisite to eligibility for purchase of Voluntary Supplemental Life Insurance coverage from Defendant under the employer's plan, said prerequisite was waived, and Defendant is otherwise estopped from asserting that contention by its conduct in knowingly charging and accepting payment of premiums for the coverage purchased by Eric S. Frye when Defendant knew Mr. Frye had not submitted evidence of insurability and by virtue of Defendant's solicitation materials creating the belief that evidence of insurability was not necessary for coverage within the guaranteed issue amount of $200,000.

30. That the Defendant is liable to the Plaintiff for the benefits due under the policy, less any credit due for partial payments, plus interest on the benefits due pursuant to GS 58-58-110.

### COUNT II (Fraudulent Filing of 1099, 26 U.S.C. §7434)

31. That the allegations of Paragraphs 1 through 21 above are re-alleged as if fully set out herein.

32. That, as of May 24, 2021, Defendant knew Plaintiff contended that an additional $60,000 of life insurance benefits was being claimed, that Plaintiff was in need of additional claim information and documents from Defendant in order to proceed with an appeal of the adverse benefits determination, and that Plaintiff intended to appeal the adverse benefits determination.

33. That, as of January 31, 2022, Defendant had failed to provide the additional claim information and documents Plaintiff had requested and the time for Plaintiff to appeal the adverse benefits determination had not yet begun to run because of the ongoing COVID related state of emergency still in place.

34. That, the $10,000 payment Defendant issued to Plaintiff on January 22, 2021, was paid to Plaintiff as a life insurance death benefit and that the payment was so designated by the Defendant on the payment voucher issued to Plaintiff (Exhibit B).

35. That, during the month of January 2022, Defendant falsely and fraudulently reported to the IRS on Form 1099-Misc that Defendant had made a payment reportable as income to Plaintiff in the amount of $10,000; upon information and belief, the $10,000 payment Defendant reported to the IRS as income was the $10,000 life insurance death benefit paid to Plaintiff on January 22, 2021.

36. That, at the time the Defendant filed the aforesaid fraudulent miscellaneous income report with the IRS, Defendant knew that payment of life insurance death benefits to the Plaintiff on January 22, 2021, was not reportable income under the Internal Revenue Code.

37. That Plaintiff, through counsel, made demand upon Defendant on February 22, 2022 (Exhibit B) to correct its fraudulent conduct by filing an amended 1099 with the IRS showing no income had been paid to Plaintiff by Defendant in 2021, but Defendant did not respond to that demand.

38. That Plaintiff timely filed her federal and state income tax returns by April 15, 2022, at which time she was required to list the $10,000 of income reported by Defendant on the 1099-Misc, thereby incurring an excess tax liability in the approximate amount of $1500, which she paid.

39. That Defendant is liable to Plaintiff for the $5,000 penalty set forth in 26 USC §7434(b) or the damages she sustained in the approximate amount of $1500 plus interest, costs, and attorney's fees, whichever is greater.

### COUNT III (ERISA Claim, 29 U.S.C. §1132(c)(1))

40. That the allegations of Paragraph 1 through 30 above are re-alleged as if fully set out herein.

41. That the Plaintiff, through counsel, requested information from Defendant in reference to its adverse claim determination in a letter dated March 20, 2021, Exhibit A.

42. That Defendant failed to provide the information requested within thirty (30) days, and its failure to provide said information continues through the date of filing this action.

43 That the Plaintiff, through counsel, requested information from Defendant in reference to its adverse claim determination and in connection with Plaintiff's administrative appeal of that determination in a letter dated March 9, 2022, Exhibit C.

44. That Defendant failed to provide the information requested within thirty (30) days, and its failure to provide said information continues through the date of filing this action.

45. That the information requested by Plaintiff on March 20, 2021, and March 9, 2022, is information Defendant is required to provide in connection with its role of administering the life insurance benefits at issue such that the Court should impose a *per diem* penalty up to $110 per day for each of the two violations identified above.

46. That Defendant is personally liable to the Plaintiff for the aforesaid *per diem* penalty

for failure to provide the information requested from and after March 20, 2021 and March 9, 2022, respectively, until the information has been provided, in accordance with 29 U.S.C. §1132(c)(1).

WHEREFORE, having set forth her cause of action herein, the Plaintiff prays the Court for the following relief:

1. That the Plaintiff have and recover judgment against the Defendant for the Voluntary Supplemental Life Insurance death benefits due under the group policy, in an amount which exceeds Twenty-Five Thousand Dollars ($25,000), plus interest thereon from and after January 22, 2021, until paid, as allowed by law.

2. That the Plaintiff have and recover from the Defendant judgment for the statutory penalty, or actual damages, interest, costs, and attorney's fees, whichever is greater, for its violation of 26 U.S.C. §7434.

3. That the Plaintiff have and recover an appropriate *per diem* penalty for the time periods from and after March 20, 2021 and March 9, 2022, respectively, pursuant to 29 U.S.C. §1132(c)(1), when Defendant failed to provide the information Plaintiff had requested.

4. That the costs of this action be taxed against the Defendant, including an award of reasonable attorney's fees.

5. For such other and further relief as the Court deems just and proper.

This the 1st day of August 2022.

DORAN LAW OFFICES
Attorney for Plaintiff

By: /s/ Michael Doran
MICHAEL DORAN
Nc State Bar No. 10855
Post Office Box 1006
Salisbury, NC 28145-1006
T: (704) 216-1544
F: (704) 254-6415
mdoran@doranlaw-nc.com